UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CORETTE BYRD, <br><br> Plaintiff, <br><br> v. <br><br> XAVIER BECERRA, <br><br> Defendant. | Civil Action No. 22-3746 (TSC) |

## MEMORANDUM OPINION

Plaintiff Corrette Byrd, a former employee of the Bureau of Primary Health Care ("BPHC"), brought this action against Xavier Becerra, in his official capacity as Secretary of the U.S. Department of Health and Human Services ("HHS"), pursuant to Title VII of the Civil Rights Act of 1964, alleging her employer discriminated against her based on her race. Defendant moved to dismiss Counts I and II, and to limit Plaintiff's eligibility to receive back pay on the grounds that she voluntarily resigned from her position.

Having considered the Amended Complaint and the parties' briefing, the court will GRANT in part Defendant's partial motion to dismiss. The court will dismiss Counts I and II, but declines to rule on Plaintiff's eligibility for back pay on Count III.

### I.   BACKGROUND

Plaintiff worked at BPHC within HHS until she resigned voluntarily in March 2021. Am. Compl., ECF No. 13 at 2, 11. She was a Senior Advisor, and the only Black Senior Advisor while she was employed at BPHC. *Id.* at 2.

Plaintiff alleges that, from around November 2019 until she resigned, her supervisors reassigned about 95% of her duties to her White colleagues, including her leadership of the

Ending HIV Epidemic Initiative. *Id.* at 2–3. She also claims that she was not given "any new work" while other Senior Advisors were given valuable, "career enhancing" opportunities. *Id.* at 3. Plaintiff alleges that in May 2020 she received a special assignment to "lead and develop the National Hypertension Initiative," which was cut short due to an "overwhelming, urgent amount of work back at BPHC." *Id.* at 4. When she returned to BPHC, however, she was "barely provided with any assignments at all," and the assignments she did receive she had to "beg" for and were "busy work." *Id.* at 4–5. After Plaintiff "asked [her supervisor] for work several times," she was assigned to "develop and lead the transition work for the new administration." *Id.* at 5. But after Plaintiff spent "several months" developing transition materials, her supervisor assigned another Senior Advisor to the Health Resources and Services Administration's ("HRSA") Office of the Administrator to support the transition. *Id.* at 7.

In December 2020, Plaintiff applied for a vacant Supervisory Public Health Analyst position. *Id.* at 8. She was interviewed for the position, but one of her White colleagues was eventually selected. *Id.* at 8, 10. While waiting to hear back regarding the position, Plaintiff had her 2020 performance review, in which she received a 4 out of 5 rating for "achiev[ing] more than expected results." *Id.* at 8. Because she received a 4 rather than a 5, however, Plaintiff was denied a pay bump and was given a lower bonus than she would have if she received a 5. *Id.* at 9. Plaintiff claims her supervisors "did not rate any white Senior Advisors lower than [her] for this performance period." *Id.* at 10. She challenged her performance rating, but her second line supervisor, who "had not assigned [Plaintiff] any work 90 days prior to the end of year performance review," said that "the write up and rating reflect[ed]" Plaintiff's work. *Id.* at 9.

On March 10, 2021, two days before she resigned, Plaintiff made initial contact with an Equal Employment Opportunity ("EEO") Counselor. *Id.* at 2. The Equal Employment

Opportunity Commission issued a Final Agency Decision on September 20, 2022. *Id.* On December 16, 2022, Plaintiff filed this action. On April 26, 2023, the court granted Plaintiff's motion to file an Amended Complaint. Min. Order, April 26, 2023. In the operative Complaint, Plaintiff requests compensatory damages, "back pay as if [Plaintiff] had been promoted, plus interest;" Plaintiff's "retroactive within grade increase and back pay, plus interest," a revised performance rating and accompanying cash bonus, an injunction prohibiting "further discriminati[on] against Plaintiff," and attorney's fees and costs. Am. Compl. at 14.

Defendant filed a Partial Motion to Dismiss Count I and II and to limit Plaintiff's eligibility to recover back pay. Partial Mot. to Dismiss Am. Compl., ECF No. 14; *see* Mem. in Supp., ECF No. 14-1 ("Motion"). Defendant argues that (1) Plaintiff did not exhaust her administrative remedies in Count I because she did not make initial contact with her EEO Counselor within 45 days of the discriminatory acts, Motion at 8–11, (2) Plaintiff failed to state a claim in Count I or Count II, *id.* at 11–21, and (3) Plaintiff's ability to recover back pay should be limited to the date of her resignation because she did not plead that she was constructively discharged, *id.* at 21–24.

In opposition, Plaintiff contends she exhausted Count I because it is a hostile work environment claim, and therefore only one of the alleged acts needed to occur within 45 days of her initial contact with her EEO Counselor. Mem. in Opp'n, ECF No. 15 at 6–7 ("Opp'n"). Plaintiff also argues that her allegations allow the court to draw a reasonable inference of discrimination for Counts I and II and that denying Plaintiff career opportunities by reassignment constitute an adverse employment action. *Id.* at 8–11, 14–15.

## II.   LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a defendant may move to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P.

12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). In other words, the plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citation omitted).

In deciding a motion to dismiss, the court presumes the truth of the factual allegations in the complaint and affords the plaintiff "every favorable inference that may be drawn from the allegations of fact." *Laughlin v. Holder*, 923 F. Supp. 2d 204, 208–09 (D.D.C. 2013) (citing *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)). The court does not, however, "accept as true 'a legal conclusion couched as a factual allegation,' nor inferences that are unsupported by the facts set out in the complaint." *Id.* at 209 (citation omitted).

### III.   ANALYSIS

**A.   Count I**

Defendant moves to dismiss Count I on the grounds that Plaintiff failed to exhaust her administrative remedies, Motion at 7–11, failed to plead an inference of discrimination, *id.* at 11–15, and failed to allege an adverse employment action, *id.* at 18–21.

*i.   Count I alleges discrete discriminatory acts*

To bring a civil action under Title VII, an aggrieved party must first "timely exhaust . . . administrative remedies." *Bowden v. United States*, 106 F.3d 433, 437 (D.C. Cir. 1997). To exhaust administrative remedies, "[a]n aggrieved person must initiate contact with [an EEO] Counselor within 45 days of the date of the matter alleged to be discriminatory." 29 C.F.R. § 1614.105(a)(1). This exhaustion requirement is "akin to a statute of limitations." *Stewart v. Ashcroft*, 352 F.3d 422, 425 (D.C. Cir. 2003). Thus, although exhaustion is not a "jurisdictional bar," the court "must still address" it at the outset. *Id.*

Defendant argues that Count I pleads discrete acts of discrimination, whereas Plaintiff contends that Count I pleads a hostile work environment. *Compare* Motion at 8–9, *with* Opp'n at 6–7. Discrete acts claims and hostile work environment claims contain different exhaustion requirements. *See, e.g.*, *Coleman-Adebayo v. Leavitt*, 326 F. Supp. 2d 132, 137–38 (D.D.C. 2004). Accordingly, the court must identify which type of claim Plaintiff presses in Count I before it can determine whether that claim was exhausted.

A claim pleads discrete acts of discrimination if it alleges "incidents that were different in kind, involved different individuals, and occurred at different times." *Est. of Rudder v. Vilsack*, 10 F. Supp. 3d 190, 197 (D.D.C. 2014). To plead a hostile work environment claim, the complaint must allege "'discriminatory intimidation, ridicule, and insult' that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Baloch v. Kempthorne*, 550 F.3d 1191, 1201 (D.C. Cir. 2008) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)). "[T]he removal of important assignments, lowered performance evaluations, and close scrutiny of assignments by management" are not "sufficiently intimidating or offensive in an ordinary workplace context" to support a hostile work environment claim, especially when they are not close in time. *Nurriddin v. Bolden*, 674 F. Supp. 2d 64, 94 (D.D.C. 2009). And "a plaintiff may not combine discrete acts to form a hostile work environment claim without meeting the required hostile work environment standard." *Baird v. Gotbaum*, 662 F.3d 1246, 1252 (D.C. Cir. 2011) ("*Baird I*").

Count I alleges discrete acts of discrimination, not a hostile work environment. It states that "Defendant violated Title VII when it removed her substantive duties because of her race, beginning in 2019 and continuing through the duration of her employment," specifically that Plaintiff's supervisor assigned a coworker to take over her transition work, and another coworker

was given "the authority to manage and assign work" to the Senior Advisors, despite having less experience than Plaintiff.  Am. Compl. at 11–12.  Although Plaintiff pleads these acts were "similar in kind," she concedes they occurred over the course of approximately two years and involved Plaintiff's supervisor and several different coworkers.  *See Est. of Rudder*, 10 F. Supp. 3d at 197.

Count I alleges only removal of substantive duties, which is not the kind of "intimidation, ridicule, and insult," of the severity or pervasiveness necessary to state a hostile work environment claim.  *See Baloch*, 550 F.3d at 1201.  Indeed, "the removal of important assignments," especially when not close in time, cannot support a hostile work environment claim.  *Nurriddin*, 674 F. Supp. 2d at 94.  And, as in *Baloch*, none of the alleged "actions directed at [Plaintiff] expressly focused on [her] race," nor are her claims of harm supported by "evidence of tangible workplace consequences, whether financial, physical, or professional." 550 F.3d at 1201.  Instead, Plaintiff alleges that these acts caused "pain and suffering, emotional distress, [and] mental anguish."  Am. Compl. at 12.  Plaintiff also notes that she lost "future . . . wages," but fails to give any information on how or why the alleged removal of her substantive duties caused future lost wages.  *See id.*

Plaintiff argues that Count I states a hostile work environment claim because it "involves a continuing series of the same type of employment actions, which occurred relatively frequently and were perpetrated by the same managers."  Opp'n at 7–8.  But Plaintiff only identifies one example, *id.* at 7, and the operative Complaint only identifies two examples, which allegedly took take place over the course of approximately two years.  Am. Compl. at 11 ("Defendant violated Title VII when it removed her substantive duties because of her race, beginning in 2019 and continuing through the duration of her employment"); *id.* (Plaintiff's "last working day . . .

was March 12, 2021"). Even so, frequency and type of conduct are only two of the relevant considerations. "Severity and pervasiveness are determined by reference to 'all the circumstances,' including 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" *Baird v. Gotbaum*, 792 F.3d 166, 169 (D.C. Cir. 2015) ("*Baird II*") (citation omitted). The mere fact that Plaintiff alleges multiple instances of the same kind of conduct does not render Count I a hostile work environment claim.

      ii.    *Count I fails to state a claim*

Where an employee alleges discrete discriminatory acts, "[e]ach discrete discriminatory act starts a new clock for filing charges alleging that act." *Nat'l R.R. Corp. v. Morgan*, 536 U.S. 101, 113 (2002). In other words, only discrete acts that occurred within 45 days of when the plaintiff contacted an EEO Counselor are exhausted. *See id.* "Discrete discriminatory acts are not actionable if time barred," even when they relate to acts that were exhausted within the applicable limitations period. *Id.* And the continuing violations doctrine—a principle of equitable tolling that allows a court to find a claim was brought timely "so long as one act falls within the charge filing period"—does not apply to discrete acts claims. *Id.* at 114.

Plaintiff first contacted her EEO Counselor on March 10, 2021. Am. Compl. at 2. Thus, to exhaust a discrete act claim, the act must have occurred on or after January 24, 2021—45 days prior. The only discrete act in Count I that could possibly be within this timeframe is Plaintiff's allegation that her supervisor assigned a coworker to take over her transition work "[i]n or about late January 2021." *Id.* at 7, 11, 13. Even assuming this "late January" reassignment occurred after January 24, 2021, however, Plaintiff's supervisor's decision to assign a coworker to take over her transition work would be insufficient to carry Count I alone.

Title VII prohibits "discrimination based on race, color, religion, sex, or national origin" in "[a]ll personnel actions affecting employees or applicants for employment . . . in executive agencies" of the United States. 42 U.S.C. § 2000e-16(a). "[T]he two essential elements of a discrimination claim" under Title VII "are that (i) the plaintiff suffered an adverse employment action," *Baloch*, 550 F.3d at 1196, and (ii) "the motive to discriminate was one of the employer's motives" in taking the adverse action, *Univ. of Tenn. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 343 (2013). Putting aside the adverse employment action requirement, Plaintiff does not plead an inference that any adverse action was motivated by her race.

"Though the 'initial burden' of pleading the 'because of' element is 'not onerous,' a plaintiff cannot survive a motion to dismiss merely . . . 'by invoking her race, sex, age, or disability, in the course of a claim's narrative.'" *Keith v. U.S. Gov't Accountability Off.*, No. 21-cv-2010, 2022 WL 3715776, at *3 (D.D.C. Aug. 29, 2022) (citation omitted; formatting modified). Rather, the "plaintiff must 'allege some facts that demonstrate [that her] race was the reason for defendant's actions.'" *Doe #1 v. Am. Fed'n of Gov't Emps.*, 554 F. Supp. 3d 75, 102 (D.D.C. 2021) (citation omitted). One way that a plaintiff may plead an inference of discrimination is "by showing 'that she was treated differently from similarly situated employees who are not part of the protected class.'" *Brown v. Sessoms*, 774 F.3d 1016, 1022 (D.C. Cir. 2014) (citation omitted). To do so, the plaintiff "must allege some facts to ground a reasonable inference that [she] was in fact similarly situated to comparator employees." *Keith*, 2022 WL 3715776, at *3.

Plaintiff alleges no facts that could ground an inference that her White colleagues were similarly situated to her. The Amended Complaint does not allege that her White colleagues were less competent or qualified to receive the assignments. It merely provides that Plaintiff is

Black, and the other Senior Advisors were White. Am. Compl. at 2. Plaintiff's allegation that her supervisor gave her "substantive duties to her white colleagues," *id.* at 11, is itself insufficient to alone support an inference of racial discrimination.

Plaintiff claims that she does not have to plead that her comparators are similarly situated to survive a motion to dismiss, citing *Woods v. City of Greensboro*, 855 F.3d 639 (4th Cir. 2017), for support. Opp'n at 10–11. The allegations in *Woods*, however, serve to highlight the insufficiency of Plaintiff's Amended Complaint. In *Woods*, the plaintiff "actually allege[d] particular examples of how the [defendant] has treated similarly situated white businesses differently" than the plaintiff, including that the defendant "entered into other deals with nonminority businesses that had a history of default, and therefore carried greater default risks." 855 F.3d at 650. Thus, the plaintiff alleged not only that it was a minority business and the defendant entered into deals with nonminority businesses; it also alleged that those nonminority businesses that secured deals presented greater risk to the defendant than did the plaintiff. *Id.* The plaintiff also alleged that the defendant, relying on technicalities that created a "higher standard" when it came to lending to minority companies, backed out of commitments with minority companies, but did not do so with White companies. *Id.* As a result, the Fourth Circuit held that the plaintiff's allegations were sufficient to state a claim and concluded that any differences between the plaintiff's case and the plaintiff's comparators would properly be determined in evidentiary proceedings. *Id.* at 650–51. Here, Plaintiff's Amended Complaint lacks these more detailed allegations.

Moreover, Plaintiff's argument is inconsistent with the nature of *Iqbal*'s framework. Under *Iqbal*, allegations in pleadings must be "plausible," not just "conceivable." 556 U.S. at 680 (citation omitted). That means the plaintiff must plead facts sufficient to "nudge[]" her

claims across that line—allegations that are more than "bare assertions" that merely recite the required elements. *Id.* at 680–81 (citation omitted). It is therefore not uncommon for courts in this district to grant motions to dismiss where the plaintiff fails to plead facts supporting a comparator allegation. *E.g.*, *Keith*, 2022 WL 3715776, at *3 ("[T]o plausibly plead the causation element in this way, Keith must allege some facts to ground a reasonable inference that the plaintiff was in fact similarly situated to comparator employees"); *Mohamed v. George Washington Univ.*, No. 22-cv-812, 2022 WL 3211806, at *3–4 (D.D.C. Aug. 29, 2022) ("Since the 'plaintiff has provided the Court with no details about the other employees that would enable one to draw an inference as to whether they were similar,' there is no concomitant inference of discrimination." (citation omitted)); *see Jones v. Ass'n of Am. Med. Colls.*, No. 22-cv-1680, 2023 WL 2327901, at *11–12 (D.D.C. Mar. 2, 2023) (plaintiff's allegations regarding disparate treatment "are 'wholly conclusory'" (citation omitted)); *Harris v. Mayorkas*, No. 21-cv-1083, 2022 WL 3452316, at *6 (D.D.C. Aug. 18, 2022) ("While the Amended Complaint generally avers that 'similarly situated co-workers outside of her race were not treated in the manner in which she was,' Plaintiff offers no facts to back that up." (internal citation omitted; formatting modified)).

Because Plaintiff fails to allege that her comparators are similarly situated, the court will grant Defendant's motion to dismiss Count I.

**B.     Count II**

Defendant moves to dismiss Count II on the ground that Plaintiff has failed to plead an inference of discrimination, Motion at 16–17, and failed to plead an adverse employment action, *id.* at 18–21.

Plaintiff alleges that she was issued "an unfairly low performance rating," which "denied her a within grade increase and lowered her cash bonus, because of her race," and her supervisors "did not rate any white Senior Advisors lower than [her]" that year. Am. Compl. at 10, 12. She also contends that her White colleagues were given assignments and opportunities to grow that she was not provided. *Id.* at 13. But again, Plaintiff has failed to allege that her White colleagues are appropriate comparators. She acknowledges that some her colleagues may have received the same performance rating as her, but fails to allege that any of her White colleagues who received the same rating performed worse than her or those who received a better rating performed the same as her. The mere fact that Plaintiff only had White colleagues, some of whom received better reviews and opportunities, does not support an inference of discrimination, even at the motion to dismiss stage.

Plaintiff also implies that her supervisor's response to her challenging her performance review was problematic because her supervisor had not given her an assignment within 90 days of the review. *Id.* at 9. That fact alone, however, cannot support an inference that her supervisor discriminated against her based on her race when she affirmed her performance rating.

**C.     Damages**

Finally, Defendant contends that Plaintiff cannot recover back pay for the period after her departure on March 10, 2021, because she resigned voluntarily. Motion at 21–24; Reply to Opp'n to Mot. to Dismiss, ECF No. 16 at 9. The court declines to decide this damages question at the motion to dismiss stage. For one thing, "the court is generally reluctant to wade into a legal dispute before the adversarial process has had an opportunity to shed light on the question at hand." *Marcus v. Geithner*, 813 F. Supp. 2d 11, 21 (D.D.C. 2011) (discussing a damages argument made at the motion to dismiss stage in a Title VII action). For another, it is unclear

whether Plaintiff seeks back pay on Count III—the only count remaining after the court dismisses Counts I and II—at all.  Count III enumerates "future lost wages, pain and suffering, emotional distress, mental anguish, and/or punitive damages," Am. Compl. at 14, but the Amended Complaint requests "back pay as if [Plaintiff] had been promoted, plus interest," and Count III concerns denial of a promotion, *see id.* at 13–14.  Rather than decide this issue when it may not be relevant, the court leaves damages to another day.

## IV.   CONCLUSION

For the foregoing reasons, the court will GRANT in part Defendant's partial motion to dismiss.  A separate Order will accompany this Memorandum Opinion.

Date: February 5, 2024

*Tanya S. Chutkan*
TANYA S. CHUTKAN
United States District Judge