# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CORETTE BYRD, <br><br> Plaintiff, <br><br> v. <br><br> XAVIER BECERRA, <br><br> Defendant. | Civil Action No. 22-3746 (TSC) |

## MEMORANDUM OPINION

Plaintiff Corette Byrd, a former employee of the Bureau of Primary Health Care ("BPHC"), a division within the U.S. Department of Health and Human Services ("HHS"), brought this action against Xavier Becerra, in his official capacity as HHS Secretary, pursuant to Title VII of the Civil Rights Act of 1964, alleging that BPHC discriminated against her based on her race. Defendant moved to dismiss Counts I and II, and to limit Plaintiff's eligibility to receive back pay on the grounds that she voluntarily resigned from her position.

Having considered the record and the parties' briefing, the court will GRANT in part and DENY in part Defendant's Motion.

### I.   BACKGROUND

Plaintiff worked at BPHC as a Senior Advisor until she resigned in March 2021. Am. Compl., ECF No. 13 at 2, 11. She was the only Black Senior Advisor while she was employed at BPHC. *Id.* at 2.

Plaintiff alleges that, from around November 2019 until she resigned, her supervisors reassigned about 95% of her duties to her White colleagues, including her leadership of the Ending HIV Epidemic Initiative. *Id.* at 2–3. She also claims that she was not given "any new

work" while the White Senior Advisors were given valuable, "career enhancing" opportunities. *Id.* at 3. Plaintiff claims that in May 2020 she received a special assignment to "lead and develop the National Hypertension Initiative," which was cut short due to an "overwhelming, urgent amount of work back at BPHC." *Id.* at 4. When she returned to BPHC, however, she was "barely provided with . . . any assignments at all," and the assignments she did receive she had to "beg" for and were "busy work." *Id.* at 4–5. Her White colleagues, "almost all of whom had less experience than" she did, "began receiving special assignments and projects, details, and other opportunities," and "did not have to beg . . . for new assignments." *Id.* at 5–6. After Plaintiff "asked [her supervisor] for work several times," she was assigned to "develop and lead the transition work for the new administration." *Id.* at 5. But after Plaintiff spent "several months" developing transition materials, her supervisor assigned a White Senior Advisor to the Health Resources and Services Administration's ("HRSA") Office of the Administrator to support the transition. *Id.* at 7.

In December 2020, Plaintiff applied for a vacant Supervisory Public Health Analyst position. *Id.* at 8. She was interviewed for the position, but one of her less qualified White colleagues was eventually selected. *Id.* at 8, 10. While waiting to hear back regarding the position, Plaintiff had her 2020 performance review, in which she received a 4 out of 5 rating for "achiev[ing] more than expected results." *Id.* at 8. Because she received a 4 rather than a 5, however, Plaintiff was denied a pay increase and was given a lower bonus. *Id.* at 9. She claims her supervisors "did not rate any white Senior Advisors lower than [her] for this performance period." *Id.* at 10. Plaintiff challenged her performance rating, but her second line supervisor, who "had not assigned [Plaintiff] any work 90 days prior to the end of year performance review," said that "the write up and rating reflect[ed]" the quality of Plaintiff's work. *Id.* at 9.

On March 10, 2021, two days before she resigned, Plaintiff made initial contact with an Equal Employment Opportunity ("EEO") Counselor. *Id.* at 2. The Equal Employment Opportunity Commission ("EEOC") issued a Final Agency Decision on her complaint on September 20, 2022. *Id.* On December 16, 2022, Plaintiff filed this action. On April 26, 2023, the court granted Plaintiff's Motion to File an Amended Complaint. Min. Order, April 26, 2023. Plaintiff seeks compensatory damages, "back pay as if [Plaintiff] had been promoted, plus interest," Plaintiff's "retroactive within grade increase and back pay, plus interest," a revised performance rating and accompanying cash bonus, an injunction prohibiting "further discriminati[on] against Plaintiff," and attorney's fees and costs. Am. Compl. at 14.

Defendant filed a Partial Motion to Dismiss Count I and II and to limit Plaintiff's eligibility to recover back pay. Partial Mot. to Dismiss Am. Compl., ECF No. 14; *see* Mem. in Supp., ECF No. 14-1 ("Motion"). Defendant argues that (1) Plaintiff did not exhaust her administrative remedies in Count I because she did not make initial contact with her EEO Counselor within 45 days of the allegedly discriminatory acts, Mot. at 8–11, (2) Plaintiff failed to state a claim in Count I or Count II, *id.* at 11–21, and (3) Plaintiff's ability to recover back pay should be limited to the date of her resignation because she did not plead that she was constructively discharged, *id.* at 21–24.

In opposition, Plaintiff contends that she exhausted Count I because it is a hostile work environment claim, and therefore only one of the alleged acts needed to occur within 45 days of her initial contact with her EEO Counselor. Mem. in Opp'n, ECF No. 15 at 6–7 ("Opp'n"). Plaintiff also argues that her allegations allow the court to draw a reasonable inference of discrimination for Counts I and II and that denying Plaintiff career opportunities by reassignment constitutes an adverse employment action. *Id.* at 8–11, 14–15.

On February 5, 2024, the court granted Defendant's Motion, ECF Nos. 17, 18. But on March 7, 2024, the court *sua sponte* vacated its Memorandum Opinion and Order to reconsider its decision. Min. Order, Mar. 7, 2024; *see* Fed. R. Civ. P. 54(b) (providing that any decision "that adjudicates fewer than all the claims . . . does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims.").

## II.  LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a defendant may move to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). In other words, the plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citation omitted).

In deciding a motion to dismiss, the court presumes the truth of the factual allegations in the complaint and affords the plaintiff "every favorable inference that may be drawn from the allegations of fact." *Laughlin v. Holder*, 923 F. Supp. 2d 204, 208–09 (D.D.C. 2013) (citing *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)). The court does not, however, "accept as true 'a legal conclusion couched as a factual allegation,' nor inferences that are unsupported by the facts set out in the complaint." *Id.* at 209 (citation omitted).

### III.   ANALYSIS

#### A.   Legal Framework

*i.   Exhaustion*

To bring a civil action under Title VII, a plaintiff must first "timely exhaust . . . administrative remedies." *Bowden v. United States*, 106 F.3d 433, 437 (D.C. Cir. 1997). To exhaust administrative remedies, "[a]n aggrieved person must initiate contact with [an EEO] Counselor within 45 days of the date of the matter alleged to be discriminatory." 29 C.F.R. § 1614.105(a)(1). This exhaustion requirement is "akin to a statute of limitations." *Stewart v. Ashcroft*, 352 F.3d 422, 425 (D.C. Cir. 2003). Thus, although exhaustion is not a "jurisdictional bar," the court "must still address" it at the outset. *Id.* "Because untimely exhaustion of administrative remedies is an affirmative defense, the defendant bears the burden of pleading and proving it." *Bowden*, 106 F.3d at 437 (citation omitted). "If the defendant meets its burden, the plaintiff then bears the burden of pleading and proving facts supporting equitable avoidance of the defense." *Id.* (citation omitted).

Claims involving discrete act claims and hostile work environment have different exhaustion requirements. *See, e.g.*, *Coleman-Adebayo v. Leavitt*, 326 F. Supp. 2d 132, 137–38 (D.D.C. 2004). Accordingly, the court must identify which type of claim is at issue before deciding whether it was exhausted.

A claim pleads discrete acts of discrimination if it alleges "incidents that were different in kind, involved different individuals, and occurred at different times." *Est. of Rudder v. Vilsack*, 10 F. Supp. 3d 190, 197 (D.D.C. 2014). To plead a hostile work environment claim, a complaint must allege "'discriminatory intimidation, ridicule, and insult' that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Baloch v. Kempthorne*, 550 F.3d 1191, 1201 (D.C. Cir. 2008) (quoting *Harris v.*

*Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)). "[T]he removal of important assignments, lowered performance evaluations, and close scrutiny of assignments by management" are not "sufficiently intimidating or offensive in an ordinary workplace context" to support a hostile work environment claim, especially when they are not close in time. *Nurriddin v. Bolden*, 674 F. Supp. 2d 64, 94 (D.D.C. 2009). And "a plaintiff may not combine discrete acts to form a hostile work environment claim without meeting the required hostile work environment standard." *Baird v. Gotbaum*, 662 F.3d 1246, 1252 (D.C. Cir. 2011) ("*Baird I*").

Where an employee alleges discrete acts, "[e]ach discrete discriminatory act starts a new clock for filing charges alleging that act." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002). In other words, only discrete acts that occurred within 45 days of when the plaintiff contacted an EEO Counselor are exhausted. *See id.* "[D]iscrete discriminatory acts are not actionable if time barred," even when they relate to acts that were exhausted within the applicable limitations period. *Id.* And the continuing violations doctrine—a principle of equitable tolling that allows a court to find a claim was brought timely "so long as one act falls within the charge filing period"—does not apply to discrete acts claims. *Id.* at 114.

  *ii.*  *Inference of discrimination*

Title VII prohibits "discrimination based on race, color, religion, sex, or national origin" in "[a]ll personnel actions affecting employees or applicants for employment . . . in executive agencies" of the United States. 42 U.S.C. § 2000e-16(a). "[T]he two essential elements of a discrimination claim" under Title VII "are that (i) the plaintiff suffered an adverse employment action," *Baloch*, 550 F.3d at 1196, and (ii) "the motive to discriminate was one of the employer's motives," *Univ. of Tenn. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 343 (2013).

"Courts in this Circuit 'have consistently recognized the ease with which a plaintiff claiming employment discrimination can survive . . . a motion to dismiss.'" *McNair v. District of Columbia*, 213 F. Supp. 3d 81, 86 (D.D.C. 2016) (quoting *Fennell v. AARP*, 770 F. Supp. 2d 118, 127 (D.D.C. 2011)). "Though the 'initial burden' of pleading the 'because of' element is 'not onerous,'" *Keith v. U.S. Gov't Accountability Off.*, No. 21-cv-2010, 2022 WL 3715776, at *3 (D.D.C. Aug. 29, 2022) (citation omitted; formatting modified), "plaintiff must 'allege some facts that demonstrate . . . race was the reason for defendant's actions,'" *Doe #1 v. Am. Fed'n of Gov't Emps.*, 554 F. Supp. 3d 75, 102 (D.D.C. 2021) (citation omitted).  One way that a plaintiff may plead an inference of discrimination is "by showing 'that she was treated differently from similarly situated employees who are not part of the protected class.'" *Brown v. Sessoms*, 774 F.3d 1016, 1022 (D.C. Cir. 2014) (citation omitted).  To do so, the plaintiff "must allege some facts to ground a reasonable inference that [she] was in fact similarly situated to comparator employees." *Keith*, 2022 WL 3715776, at *3.  The plaintiff does not need to "nam[e] comparators," or allege "specifics" at the motion to dismiss stage. *Jbari v. District of Columbia*, 304 F. Supp. 3d 201, 209 (D.D.C. 2018) (citation omitted).

   iii. *Adverse employment action*

Defendant contends that the court should apply the "personnel action" definition from *Babb v. Wilkie*, 589 U.S. 399, 406 (2020), in determining whether Plaintiff alleged an adverse employment action.  Mot. at 18–21.  In *Babb*, the Supreme Court interpreted the federal sector provision of the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 633a(a), and concluded that "age must be a but-for cause of discrimination—that is, of differential treatment—but not necessarily a but-for cause of a personnel action itself." *Babb*, 589 U.S. at 406.  In interpreting the term "personnel action," *Babb* explained that "the ADEA

does not define" the term, but "its meaning is easy to understand." *Id.* at 405. The Court incorporated the statutory definition of "personnel action" from the Civil Service Reform Act of 1978 ("CSRA"), which "broadly defines a 'personnel action' to include most employment-related decisions, such as appointment, promotion, work assignment, compensation, and performance reviews." *Id.* (citing 5 U.S.C. § 2302(a)(2)(A)). The only appellate courts to consider whether *Babb* applies to § 2000e-16—Title VII's federal sector provision—have concluded that it does. *Babb v. Sec'y, Dep't of Veterans Affs.*, 992 F.3d 1193, 1198–1205 (11th Cir. 2021) (applying *Babb*'s causation holding to § 2000e-16(a)); *Huff v. Buttigieg*, 42 F.4th 638, 645–46 (7th Cir. 2022) (same).

In interpreting Title VII's private sector provision, however, the D.C. Circuit has held that all a plaintiff need establish under Title VII's "plain text" is "that an employer has discriminated against an employee with respect to that employee's 'terms, conditions, or privileges of employment' because of a protected characteristic"—no proof of "objectively tangible harm" is required. *Chambers v. District of Columbia*, 35 F.4th 870, 874–75 (D.C. Cir. 2022) (en banc). *Chambers* held that "terms, conditions, or privileges of employment" include "the transfer of an employee to a new role, unit, or location," and that the phrase "evinced an intent to strike at the entire spectrum of disparate treatment in employment." *Id.* at 874 (formatting modified). The Court noted that "the phrase is not without limits"—it may not include "de minimis harms." *Id.* at 874–75. In so holding, *Chambers* expressly overruled the Circuit's decision in *Brown v. Brody*, 199 F.3d 446 (D.C. Cir. 1999), which interpreted § 2000e-16. *Chambers*, 35 F.4th at 875 ("*Brown*'s approach is clearly mistaken."). The Court ruled that, rather than "terms, conditions, or privileges of employment," *id.* at 873, § 2000e-16(a) prohibits discrimination in "personnel actions affecting employees." *Babb*, 992 F.3d at 1198.

For the reasons set forth below, however, the court need not decide whether to apply *Babb*'s definition of "personnel action" or *Chambers*' definition of "terms, conditions, or privileges of employment" here.

**B.     Count I**

Defendant first moves to dismiss Count I on the grounds that Plaintiff failed to exhaust her administrative remedies, plead an inference of discrimination, and plead an adverse employment action.

    *i.     Exhaustion*

Defendant argues that Count I pleads discrete acts of discrimination, whereas Plaintiff contends for the first time in her opposition that Count I pleads a hostile work environment. *Compare* Mot. at 8–9, *with* Opp'n at 6–7.

Count I alleges discrete acts of discrimination, not a hostile work environment.  The words "hostile work environment" do not appear in the Amended Complaint at all.  Moreover, Count I states that "Defendant violated Title VII when it removed her substantive duties because of her race, beginning in 2019 and continuing through the duration of her employment," specifically that Plaintiff's supervisor assigned a coworker to take over her transition work, while another coworker was given "the authority to manage and assign work" to the Senior Advisors, despite having less experience than Plaintiff.  Am. Compl. at 11–12.  Although Plaintiff pleads these acts were "different in kind," she concedes they occurred over the course of approximately two years and involved Plaintiff's supervisor and several different coworkers.  *See Est. of Rudder*, 10 F. Supp. 3d at 197.

Count I alleges only removal of substantive duties, which is not the kind of "intimidation, ridicule, and insult," of the severity or pervasiveness necessary to state a hostile work

environment claim.  *See Baloch*, 550 F.3d at 1201.  Indeed, "the removal of important assignments," especially when not close in time, cannot support a hostile work environment claim.  *Nurriddin*, 674 F. Supp. 2d at 94.  And, as in *Baloch*, none of the alleged "actions directed at [Plaintiff] expressly focused on [her] race," nor are her claims of harm supported by "evidence of tangible workplace consequences, whether financial, physical, or professional." *Baloch*, 550 F.3d at 1201.  Instead, Plaintiff alleges that these acts caused "pain and suffering, emotional distress, [and] mental anguish."  Am. Compl. at 12.  Plaintiff also notes that she lost "future . . . wages," but fails to give any information as to how or why the loss of her substantive duties caused future lost wages.  *See id.*

Plaintiff argues that Count I states a hostile work environment claim because it "involves a continuing series of the same type of employment actions, which occurred relatively frequently and were perpetrated by the same managers."  Opp'n at 7–8.  But Plaintiff makes no such assertion in her Amended Complaint.  She identifies only one example of a "continuing series of the same type of employment actions," in her opposition brief, *id.* at 7, and the Amended Complaint identifies two examples, which allegedly took take place over the course of approximately two years.  Am. Compl. at 11 ("Defendant violated Title VII when it removed her substantive duties because of her race, beginning in 2019 and continuing through the duration of her employment"); *id.* (Plaintiff's "last working day . . . was March 12, 2021.").  Moreover, frequency and type of conduct are only two of the relevant considerations in determining a hostile work environment.  "Severity and pervasiveness are determined by reference to 'all the circumstances,' including 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'"  *Baird v. Gotbaum*, 792 F.3d 166, 169 (D.C.

Cir. 2015) ("*Baird II*") (citation omitted). Simply alleging more than one instance of the same kind of conduct does not render Count I a hostile work environment claim.

Plaintiff first contacted her EEO Counselor on March 10, 2021. Am. Compl. at 2. Thus, to meet the exhaustion requirement, a discrete act must have occurred on or after January 24, 2021—45 days prior—and been named in the EEO Charge. *See Morgan*, 536 U.S. at 113. As Defendant points out, the only discrete act in Count I that could possibly be within this timeframe is Plaintiff's allegation that her supervisor assigned a coworker to take over her transition work "[i]n or about late January 2021." Am. Compl. at 7, 11, 13; Mot. at 8–9. Although this allegation is mentioned in the EEOC's Notice of Intent to Issue a Decision, ECF No. 14-2 at 2, nothing in the Amended Complaint or the record indicates when the reassignment of transition work occurred. Because the Defendant bears the burden of proving lack of exhaustion, the court therefore assumes without deciding that Plaintiff's allegation that her supervisor assigned her White coworker to take over her transition work was timely. *See Bowden*, 106 F.3d at 437.

  ii.  *Inference of discrimination*

Defendant also contends that Plaintiff failed to plead an inference of discrimination in Count I. Mot. at 11–15. The court will consider only Plaintiff's allegation that her supervisor "announced that [her White colleague] would be heading to HRSA's Office of the Administrator in early February 2021 to support the transition work in preparation for the new administration, even though [Plaintiff] had been leading and developed the transition materials," Am. Compl. at 7, as Plaintiff's other allegations were not exhausted.

Plaintiff has adequately pleaded an inference of discrimination. She alleges that "almost all of" her White colleagues "had less experience" than she did, Am. Compl. at 6, and that she

was "more qualified" than any of her White colleagues for a promotion, *id.* at 10. She then claims her transition work was reassigned to one of her White colleagues because of her race. *Id.* at 11. At the motion to dismiss stage, these allegations suffice to plead that her substantive duties were reassigned to her less qualified, less experienced colleagues because of her race.

    iii.    *Adverse employment action*

Plaintiff alleges an adverse employment action in Count I under either *Babb* or *Chambers*. First, under *Babb*, the CSRA considers "any significant change in duties, responsibilities, or working conditions" to be a "personnel action." 5 U.S.C. § 2302(a)(2)(A)(xii). Plaintiff alleges that her supervisor reassigned her transition work to her White colleagues, even though it was "the only meaningful work she was assigned since returning early from [a] detail." Am. Compl. at 7. By taking away Plaintiff's only "meaningful work," *id.,* Defendant's action caused a "significant change in duties." 5 U.S.C. § 2302(a)(2)(A)(xii). Second, under *Chambers*, although "not all changes in work assignments necessarily constitute adverse actions, . . . stripping [an employee] of the duties normally associated with that [position]" or giving an employee "significantly different responsibilities" suffices to establish an adverse employment action. *Yazzie v. Nat'l Org. for Women*, 712 F. Supp. 3d 56, 79 (D.D.C. 2024) (citation omitted). Because the transition project was a task Plaintiff worked on "[f]or several months" and was "the only meaningful work" she had, reassigning it resulted in Plaintiff having "significantly different responsibilities." 5 U.S.C. § 2302(a)(2)(A)(xii).

**C.**    **Count II**

Defendant also moves to dismiss Count II on the ground that Plaintiff has failed to plead an inference of discrimination or an adverse employment action.

*i.     Inference of discrimination*

Plaintiff has also pleaded an inference of discrimination with respect to Count II. She alleges that she was issued "an unfairly low performance rating," which "denied her a within grade increase and lowered her cash bonus, because of her race," and her supervisors "did not rate any white Senior Advisors lower than [her]" that year. Am. Compl. at 10, 12. She also contends that her White colleagues were given her assignments and received opportunities to grow that she was not provided. *Id.* at 13. The Amended Complaint, taken as a whole, also sufficiently pleads that Plaintiff's White colleagues were similarly situated to her. Plaintiff alleges that "almost all of" her White colleagues "had less experience" than her, *id.* at 6, and that she was "more qualified" than any of her White colleagues for a promotion, *id.* at 10. Thus, Plaintiff alleges that she was given an equal or lower performance rating than her less qualified and less experienced White colleagues, and that those colleagues received her assignments and growth opportunities that were denied to her because of her race. *See Brown*, 774 F 3d at 1022 (D.C. Cir. 2014) (citation omitted); *see also Jbari*, 304 F. Supp. 3d at 209 (allegations that plaintiff "was treated less favorably than others outside his protected class" sufficient at the motion to dismiss stage).

Defendant contends that Plaintiff does not allege that she "deserved a better [performance] rating than" the White Senior Advisors. Mot. at 16. Plaintiff does, however, allege that she was "more qualified" and experienced than the White Senior Advisors, Am. Compl. at 10; that she was the only Black Senior Advisor, *id.* at 2; and that her supervisors "did not rate any white Senior Advisors lower than [her] for this performance period," *id.* at 10. The allegation that she was "more qualified" for a promotion than her colleagues implies that she

performed equally or better than them as Senior Advisors. At the motion to dismiss stage, these allegations are sufficient.

      *ii.      Adverse employment actions*

Plaintiff's allegations in Count II—that she was given a lower performance rating, was not given growth opportunities, and had her substantive duties reassigned—are also "adverse employment actions" under *Babb* or *Chambers*.

First, the CSRA—upon which *Babb* relied—specifically provides that a "personnel action" includes "a performance evaluation." 5 U.S.C. § 2302(a)(2)(A)(viii). And Plaintiff alleges that she was issued "an unfairly low performance rating." Am. Compl. at 12. Second, the CSRA provides that decisions "concerning education or training" are personnel actions "if the education or training may reasonably be expected to lead to . . . promotion." 5 U.S.C. § 2302(a)(2)(A)(ix). Plaintiff claims that "many of her white colleagues" were provided "opportunities to grow and advance their careers," including "details [and] special assignments." Am. Compl. at 13. And, importantly, Plaintiff was told that she was not chosen for a promotion because she "needed to get experience leading teams and projects across the federal government." *Id.* at 10. Thus, a fair inference is that the growth opportunities Plaintiff was passed up for could have been reasonably expected to lead to her promotion. Finally, the CSRA considers "any other significant change in duties, responsibilities, or working conditions" to be a "personnel action." 5 U.S.C. § 2302(a)(2)(A)(xii). Plaintiff's allegation that her supervisor "gave [her] substantive duties away to her white colleagues" meets this definition. Am. Compl. at 13. Plaintiff alleges that "about 95% of her duties" were reassigned, *id.* at 2, which is certainly a "significant change in duties." 5 U.S.C. § 2302(a)(2)(A)(xii).

Defendant argues that Plaintiff's allegation "about some duties that others received" is not a "personnel action." Mot. at 20. To be sure, it is possible that an allegation that colleagues received "some duties" might not alone constitute a "personnel action." But Plaintiff alleged that about 95% of her substantive duties were reassigned to her White colleagues—not just "some." Am. Compl. at 2, 10. That allegation is sufficient to plead a personnel action because it represents a "significant change in duties." 5 U.S.C. § 2302(a)(2)(A)(xii).

Plaintiff's allegations likewise meet *Chambers*' definition of "terms, conditions, or privileges of employment." First, actions affecting performance evaluations are certainly adverse employment actions where they "result[] in [the] employee not receiving a cash award." *Montgomery v. McDonough*, 682 F. Supp. 3d 1, 16 (D.D.C. 2023) (citation omitted). Thus, Plaintiff's allegations that she was given an unfairly low performance rating, affecting her salary and her bonus, are sufficient to state a claim. Am. Compl. at 12. Second, Plaintiff's allegation that she was held back from growth opportunities that could be helpful in securing a promotion, Am. Compl. at 10, 13, is also an adverse employment action. *See Heavans v. Dorado*, 648 F. Supp. 3d 1, 14 (D.D.C. 2022) (exclusion from leadership meetings constitutes an adverse employment action). And finally, Plaintiff's allegation that about 95% of her substantive duties were reassigned to her White colleagues, Am. Compl. at 2, 10, suffices. As courts in this district have observed, although "not all changes in work assignments necessarily constitute adverse actions" under *Chambers*, "stripping [an employee] of the duties normally associated with that [position]" or giving an employee "significantly different responsibilities" is enough. *Yazzie*, 712 F. Supp. 79; *supra* at 12.

With regard to Plaintiff's allegations about lack of opportunities, Defendant argues that the Amended Complaint gives "no indication what those opportunities were, that the

opportunities were actually better, or that Plaintiff had applied for, was available for, and was qualified (let alone more qualified) for those particular opportunities." Mot. at 21. Not so. Plaintiff pleaded that the opportunities included "details" and "special assignments," and "other opportunities to grow and advance their careers." Am. Compl. at 13. She also alleged that she was more experienced and more qualified than the White Senior Advisors. *Id.* at 6, 10. Those allegations suffice at the motion to dismiss stage; Plaintiff states a claim for relief in Count II.

### D.     Damages

Finally, Defendant contends that Plaintiff cannot recover back pay for the period after her departure on March 10, 2021, because she resigned voluntarily. Mot. at 21–24; Reply to Opp'n to Mot. to Dismiss, ECF No. 16 at 9. The court declines to decide this damages question at this stage of the litigation. For one thing, "the court is generally reluctant to wade into a legal dispute before the adversarial process has had an opportunity to shed light on the question at hand." *Marcus v. Geithner*, 813 F. Supp. 2d 11, 21 (D.D.C. 2011) (discussing a damages argument made at the motion to dismiss stage in a Title VII action). For another, it is unclear which counts Plaintiff seeks back pay for. Each of Counts I, II, and III enumerate "future lost wages, pain and suffering, emotional distress, mental anguish, and/or punitive damages," Am. Compl. at 12–14, but the Amended Complaint also requests "back pay as if [Plaintiff] had been promoted, plus interest," *id.* at 14. Rather than decide this issue when it may not be relevant, the court leaves damages to another day.

## IV. CONCLUSION

For the foregoing reasons, the court will GRANT in part and DENY in part Defendant's partial motion to dismiss. A separate Order will accompany this Memorandum Opinion.

Date: October 28, 2024

*Tanya S. Chutkan*
TANYA S. CHUTKAN
United States District Judge